IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | No. 01 CR 1098 - 3 |
| ) | |
| LANCELOT HENRY ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

The Seventh Circuit issued a limited remand on April 4, 2005 instructing this court, pursuant to *United States v. Paladino*, 401 F.3d 471 (7th Cir. 2005), to provide the Seventh Circuit this court's views as to the probable result of resentencing of defendant Lancelot Henry ("Henry"), applying the United States Sentencing Guidelines ("Guidelines"), in an advisory manner. 124 Fed. Appx. 464 (7th Cir. 2005). For the reasons set forth below, this court informs the Seventh Circuit that upon a remand for resentencing using the Guidelines as advisory, this court would impose the same sentence that it originally imposed on Henry.

A. The Paladino Limited Remand

   1. The Purpose of the Paladino Limited Remand

The Supreme Court's decision in *United States v. Booker* held that the Sixth Amendment rights enumerated in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Blakely v. Washington*, – U.S. –, 124 S. Ct. 2531 (2004), also apply to defendants being sentenced in federal court under the Federal Sentencing Guidelines. – U.S. –, 125 S. Ct. 738 (2005) (Stevens, J. Opinion). The *Booker* court held that the proper remedy was to alter the Sentencing Reform Act by making the Guidelines advisory instead of mandatory. *Id.* at 758 (Breyer, J. Opinion). The *Paladino* limited

remand is a consequence of the *Booker* decision because the *Booker* decision must be applied to all defendants who are on direct appeal as of *Booker's* January 12, 2005 release date. *Id.* at 770 ("As these dispositions indicate, we must apply today's holdings – both the Sixth Amendment holding and our remedial interpretation of the Sentencing Act – to all cases on direct review."); *see e.g., United States v. Schlifer*, 403 F.3d 849, 853 (7th Cir. 2005) ("Thus in every pending appeal where the district court sentenced a defendant under the now-defunct mandatory Guidelines scheme, error will have been committed."); *compare McReynolds v. United States*, 397 F.3d 479, 481 (7th Cir. 2005) ("[*B*]*ooker* does not apply retroactively to criminal cases that become final before its release on January 12, 2005.").

Although *Booker* is now applied to every defendant on direct appeal, and a district court's prior imposition of a sentence under the mandatory sentencing Guidelines was error, *see United States v. Castillo*, 406 F.3d 806, 823 (7th Cir. 2005) (quoting *United States v. White*, 406 F.3d 827, 835 (7th Cir. 2005) ("[T]he mere mandatory application of the Guidelines – the district court's belief that it was required to impose a Guideline sentence – constitutes error.")), "the existence of error, however, does not mean that every appeal must lead to resentencing." *Schlifer*, 403 F.3d at 853. Instead, the Seventh Circuit must classify the type of error caused by the district court's imposition of a sentence under the mandatory Guidelines system when the defendant challenges his sentence on direct appeal. The classification of the error determines what type of review the Seventh Circuit will undertake in evaluating the impact of the error, and in turn, what actions, if any, must be taken by the district court to rectify the error in sentencing.

The Seventh Circuit's review is plenary when the defendant preserved an objection under the Sixth Amendment to sentencing under the mandatory Guidelines system at the district court

2

level. The result is that the defendant's sentence will be vacated and the case is remanded to the district court for resentencing in light of the *Booker* decision. *See Schlifer*, 403 F.3d at 854 (holding that the defendant's objection based on *Blakely* grounds was sufficient to preserve his objection to the imposition of a sentence under the mandatory Guidelines).

If the defendant did not preserve an objection to the imposition of a sentence by the district court under the procedures of the mandatory application of the Guidelines, then the question becomes why did the defendant fail to present the objection before the district court. A defendant who knowingly, intentionally and voluntarily relinquished or abandoned his known right to bring his Sixth Amendment challenge to the imposition of a sentence under the procedures of the mandatory application of the Guidelines has waived the *Booker* constitutional violation, and the Seventh Circuit should affirm the sentence on this issue. *United States v. Cunningham*, 405 F.3d 497, 503 (7th Cir. 2005) (citing *United States v. Olano*, 507 U.S. 725, 733 (1993); *United States v. Penny*, 60 F.3d 1257, 1261 (7th Cir. 1995)).

A defendant who merely forfeited his objection by "failing to make a timely assertion" of his right is entitled to a plain error review of his sentence under *Booker*. *Cunningham*, 405 F.3d at 503 (citing *Olano*, 507 U.S. at 733; *United States v. Griffin*, 84 F.3d 912, 924 (7th Cir. 1996); Fed. R. Crim. P. 42(b)). Under the plain error review, "an appellate court can correct an error that the defendant failed to raise [before the district court] only when there was (1) error, (2) that is plain, and (3) that affects substantial rights. ... If these [three] conditions are met, an appellate court may exercise its discretion to notice a forfeited error if (4) the error seriously affects the fairness, integrity, or public reputation of the proceedings." *United States v. Henningsen*, 402 F.3d 748, 750 (7th Cir. 2005) (citing *Olano*, 507 U.S. at 732; *Paladino*, 401 F.3d at 471)).

3

The defendant on review will be able to satisfy easily the first and second prongs of the plain error test because he was sentenced under the mandatory Guidelines procedures. The Seventh Circuit has held that sentencing a defendant under the mandatory Guidelines system is an (1) error and (2) that the error is plain. *United States v. Askew*, 403 F.3d 496, 509 (7th Cir. 2005) ([The defendant's] "sentence was imposed under a sentencing scheme that we now know is unconstitutional. [The defendant's] sentence, therefore, was imposed in error, and the error is plain."). Furthermore, the fourth prong, that the error seriously affects the fairness, integrity, or public reputation of the proceedings, is satisfied when the defendant received a more severe sentence under the unconstitutional mandatory Guidelines when compared to a theoretical sentence the district court would have imposed under the advisory Guidelines procedure. *United States v. Paladino*, 401 F.3d 471, 483 (7th Cir. 2005) ("To tell a defendant we know your sentence would have been 60 months shorter had the district judge known the Guidelines were merely advisory ... – but that is your tough luck and you'll just have to stew in prison for 60 additional months because of an acknowledged violation of the Constitution – would undermine the fairness, the integrity and the public repute of the federal judicial process.").

The third prong of the plain error test, whether the defendant's substantial rights have been affected, is the central issue for the plain error review. A plain error affects the defendant's substantial rights when the plain error is "prejudicial, in that it 'affected the outcome of the district court proceedings.'" *United States v. Macedo*, 406 F.3d 778, 790 (7th Cir. 2005) (quoting *Olano*, 507 U.S. at 734). A defendant's substantial rights are only affected when he would have received a lesser sentence from the district court under the post-*Booker* advisory Guidelines when compared to the actual sentence imposed by the district court under the unconstitutional

4

mandatory Guidelines system. *Paladino*, 401 F.3d at 483 ("[I]f the judge would have imposed the same sentence even if he had thought the Guidelines merely advisory ... there is no prejudice to the defendant."); *see e.g., United States v. Goldberg*, 406 F.3d 891, 894 (7th Cir. 2005) (noting that the district court judge's treatment of the Guidelines as mandatory is plain error when the district court judge would have imposed a shorter sentence if the judge had known the Guidelines were merely advisory).

The Seventh Circuit determines whether the third prong of the plain error test, whether the defendant experienced prejudice by being sentenced under the mandatory Guidelines, is satisfied through one of two methods. The first method for the Seventh Circuit to evaluate whether prejudice has occurred is by reviewing the district court record and determining without further input from the district court, what the district court would have done had that court known that the Guidelines were advisory instead of mandatory. *United States v. Lee*, 399 F.3d 864, 866 (7th Cir. 2005) (examples of situations where the Seventh Circuit might be able to determine on its own whether prejudice occurred through a review of the district court record include: (1) the district court judge had no discretion on the sentence because the court was required to impose a mandatory sentence statute independent from the Guidelines; (2) the defendant experienced no prejudice under the original sentence because the mandatory Guidelines prohibited the district court judge from imposing a higher sentence or the judge made a mistake in sentencing that benefitted the defendant; (3) the district court judge provided an indication that he or she was constrained from departing downward due to a procedural default that occurred during the sentencing procedure); *see e.g., United States v. Henry*, – F.3d –, No. 04-2036, 2005 WL 1243337, at *4 (7th Cir. May 26, 2005) ("We note, though, that the district

court's discretion to impose a lower sentence will be constrained by a 10 year mandatory-minimum."); *United States v. Douglas*, – F.3d –, No. 03-2566, 2005 WL 1243356, at *7 n.1 (7th Cir. May 25, 2005) (noting that there was no *Booker / Paladino* issue when the defendant's sentence of a mandatory life imprisonment was imposed pursuant to an independent statute and was not a product of the Guidelines).

The other method of determining whether a defendant suffered prejudice from being sentenced under the unconstitutional mandatory Guideline system is for the Seventh Circuit to ask the district court, through a limited remand, whether the district court would have imposed a different sentence, (and presumably lower sentence), had the district court known that the Guidelines were advisory instead of mandatory. This second procedure is the *Paladino* limited remand procedure which was announced on February 25, 2005.

In the *Paladino* case, Judge Posner stated that "[t]he only practical way (and it happens also to be the shortest, the easiest, the quickest, and the surest way) to determine whether the kind of plain error argued in these cases has actually occurred is to ask the district judge." 401 F.3d at 483. Judge Easterbrook in *United States v. Lee*, which was decided the same day as *Paladino*, characterized the *Paladino* remand as a mechanism "to avoid aimless speculation" as to what the district court would have done had it realized that it should have sentenced under the advisory Guidelines. 399 F.3d 864, 866 (7th Cir. 2005). The *Paladino* limited remand "is necessary only when uncertainty otherwise would leave [the Seventh Circuit] in a fog about what the district judge would have done with the additional discretion." *Id.*

A district court judge receiving a limited remand under *Paladino* is asked to decide whether he or she "would (if required to resentence) reimpose [the] original sentence," *Paladino*,

401 F.3d at 484, under the advisory Guideline system that judge imposed under the mandatory Guideline system, and therefore determining that the fact that the Guidelines are now advisory instead of mandatory would have had no impact on its sentencing decision. *Id.* Under this procedure, the district court then informs the Seventh Circuit that there is no reason to vacate the old sentence and remand for resentencing because the district court would merely reimpose the same sentence. Therefore, the prejudice requirement of the third prong of the plain error test cannot be met because the transformation of the Guidelines from mandatory application to an advisory application has had no impact on the district court's sentencing decisions in the case.

The *Paladino* opinion added a word of caution for any district court that decided to respond that it would impose the same sentence if the district court was required to resentence and therefore the change in the Guidelines created no prejudice in its case. That word of caution is *Booker's* other remedial component, the review of sentences imposed under the advisory Guidelines for reasonableness, which the Seventh Circuit said it applied on appellate review of the district court's decision. *Id.* "The proviso is important; the mere reimposition of the original sentence does not insulate [the original sentence] from appellate review under the new [reasonableness] standard." *Id.* The implicit instruction from the Seventh Circuit is that district courts should refrain from the "knee-jerk" reaction of simply saying that it will reimpose the same sentence without fully considering the issue.

In the alternative, the district court may after receiving a *Paladino* limited remand inform the Seventh Circuit that the district court "would have imposed a different sentence had [the district court] known the Guidelines were merely advisory." *Paladino*, 401 F.3d at 484. In this situation, the Seventh Circuit will vacate the old sentence and remand for resentencing. The

Seventh Circuit was very clear to point out that a *Paladino* remand is a limited. Its only purpose is to allow the district court to decide what it would have done had the advisory Guideline system been in effect at the time the original sentence was imposed. The Seventh Circuit retains jurisdiction over the case for all other purposes. *Id.* A district court wishing to resentence must inform the Seventh Circuit of that decision, and only then the Seventh Circuit "shall vacate the sentence" and remand for resentencing. *Id.* The *Paladino* limited remand does not give the district court sufficient jurisdiction to vacate the sentence on its own. Only when the Seventh Circuit vacates the originally imposed sentence and remands the case for resentencing can the district court impose a new sentence under the advisory Guidelines. This newly imposed sentence is then reviewed by the Seventh Circuit under the *Booker* reasonableness standard.

There is some uncertainty as to what the *Paladino* court meant in its use of the phrase a "different sentence" regarding the district court's decision in response to the *Paladino* limited remand. The purpose of the *Paladino* limited remand is to determine whether prong three of the plain error test is satisfied, namely whether the defendant has experienced prejudice through the imposition of his sentence under the unconstitutional mandatory Guidelines. There is no prejudice to a defendant if he received a lesser sentence under the unconstitutional mandatory Guidelines when compared to higher sentence that the district court may have wanted to impose if the district court was able to resentence the defendant under the advisory Guidelines. Put differently, there is no prejudice to the defendant if the mandatory Guidelines prevented the district court judge from imposing a higher sentence but there would be prejudice if the mandatory Guidelines prevented the district court judge from imposing a lower sentence. If there is no prejudice to the defendant, then the third prong of the plain error test is not satisfied. A

8

sentence should not be vacated and the case remanded for resentencing if a district court wishes to impose a "different," yet higher, sentence under the advisory Guidelines.

The issue of whether a *Paladino* limited remand should result in the vacating of the original sentence if the district court desires to impose a "different sentence" or a "lesser sentence" has been clarified in *United States v. Goldberg*. 406 F.3d 891 (7th Cir. 2005). The *Goldberg* opinion involved a challenge to the imposition of sentencing enhancements by the district judge, or in the alternative, sought a *Paladino* limited remand. *Id.* at 892. The *Goldberg* court, in evaluating the impact of vacating the sentence under the challenge to the sentencing enhancements, held that "[a]ny resentencing would be conducted under the new, post-*Booker* regime, in which the Guidelines are merely advisory, and so [the defendant] would be exposed to the risk of a higher sentence." *Id.* at 894. The Seventh Circuit rejected the defendant's argument that the pre-*Booker* sentence was a ceiling in the case of resentencing unless there had been a change in factual situation. *Id.* ("No inference of vindictiveness would arise from the exercise of the judge's new authority.").

The *Goldberg* court did discuss the *Paladino* limited remand stating that:

> The risk that the judge might increase the sentence is not significant in a *Paladino* remand. Such a remand asks the judge whether he would have given the defendant a *shorter sentence* had he realized the Guidelines are merely advisory. ... [I]t would be an unusual case, to say the least, in which the judge would impose a heavier rather than a lighter sentence; presumably it would be a case in which damaging new information had come to light since the *Paladino* remand.

*Id.* at 894-95 (emphasis added).

The language of *Goldberg* discussing the *Paladino* limited remand therefore clarifies the question of whether the *Paladino* court meant the words a "different sentence" to be limited to a

9

"lesser sentence." The *Goldberg* opinion appears to indicate that the imposition of a new higher sentence, although not a significant risk, was still possible under *Paladino* if damaging new information had come to light since the *Paladino* remand.[1] However, the *Goldberg* opinion characterizes the *Paladino* limited remand as one asking the district court "judge whether he would have given the defendant a *shorter sentence* had he realized the Guidelines are merely advisory." *Id.* (emphasis added).

The factual situation in *Goldberg* the Seventh Circuit contemplated is when the district court that originally sentenced under the mandatory Guidelines has responded that if the district court had the additional discretion accorded it under the advisory Guidelines, the district court would have imposed a lesser sentence. Based on this answer, the Seventh Circuit would determine that the defendant was prejudiced by the imposition of a sentence under the mandatory Guidelines, prong three of the plain error test would then be satisfied and a remand for resentencing would occur. After that remand but before the resentencing, the district court is made aware of new facts that are damaging to the defendant and change the district court's decision on resentencing and the result is the imposition of a higher sentence at resentencing.

It appears that the district court can only answer that it would impose a different sentence under the advisory Guidelines as compared to the sentence it imposed under the actual mandatory Guidelines, if that different sentence under the advisory Guidelines would be a lesser sentence. As Judge Posner held in *Goldberg*, the *Paladino* limited remand asks the district court "judge

---

[1] "Although the sentence range was at the midpoint of the Guideline range, the range is now merely advisory. Judge Shadur made clear that he was disturbed by the magnitude of Goldberg's fraud and moved by the letters from which we quoted. He might want to give Goldberg a longer sentence, and if the departure were a reasonable one we would have to affirm." *United States v. Goldberg*, 406 F.3d 891, 894 (7th Cir. 2005).

10

whether he would have given the defendant a shorter sentence had he realized the Guidelines are merely advisory." *Id.* (Judge Posner is the author of both the *Goldberg* and *Paladino* opinions.)[2]

A district court's desire to impose a greater sentence under the advisory Guidelines, while a "different sentence," would not demonstrate that the defendant was prejudiced by the imposition of the original sentence under the mandatory Guidelines. There is no prejudice and prong three of the plain error test is not satisfied, when the defendant would not have received a lesser sentence. However, as the example in *Goldberg* demonstrates, any resentencing is done under the advisory Guideline system and the district court judge does have discretion, including the discretion to increase the sentence beyond what was imposed in the old sentence, once the Seventh Circuit has vacated the old sentence and remanded for resentencing.

The best approach appears to be to provide a detailed explanation of the court's reasoning for why it believes it would or would not impose a new sentence if it resentenced the defendant. This recognizes that Seventh Circuit retains jurisdiction during the *Paladino* limited remand and therefore it is the Seventh Circuit's decision, not the district court's decision, whether the plain error test has been satisfied. The district court's task under the *Paladino* limited remand is to provide information to the Seventh Circuit so as to help facilitate the Seventh Circuit in its appellate review.

---

[2] In *United States v. Schmeilski*, Judge Williams quoted *Goldberg's* "shorter sentence" language when ordering a *Paladino* limited remand. – F.3d. –, No. 04-2014, 2005 WL 1243353, at *3 (7th Cir. May 25, 2005) (quoting *United States v. Goldberg*, 406 F.3d 891, 894 (7th Cir. 2005)), and in *United States v. Woodard*, Judge Easterbrook stated that the limited remand under *Paladino* was "so that the district judge may say whether he would have imposed a lower sentence had he anticipated the additional discretion afforded by *Booker*." – F.3d –, No. 04-2498, 2005 WL 1164002, at *3 (7th Cir. May 18, 2005).

## 2. Procedures for the District Court When Implementing the Paladino Limited Remand

The procedure the district court should follow to develop the necessary record needed for the Seventh Circuit's review under the *Paladino* limited remand is set out in the *Paladino* opinion. That prescribed procedure requires that "the district court should obtain the views of counsel, at least in writing, but 'need not' require the presence of the defendant." 401 F.3d at 484. Consequently, a hearing in open court is not required, but it appears from the *Paladino* opinion that the district court has the discretion to hold a hearing if it chooses. *See Id.* ("Upon reaching its decision (with or without a hearing) whether to resentence ..."). The district court shall inform the Seventh Circuit of its decision to keep the prior sentence or request a vacating of the prior sentence to allow a remand for a new sentence by "placing on the record a decision not to resentence, with appropriate explanation, or inform [the Seventh Circuit] of the [district court's] desire to resentence the defendant." *Id.*

The *Paladino* opinion does not detail any additional procedures that the district court should take and the Seventh Circuit has not yet provided additional guidance on this issue in subsequent opinions.[3] In performing the present *Paladino* limited remand in this case, this court

---

[3] *See e.g., United States v. Henry,* – F.3d –, No. 04-2036, 2005 WL 1243337, at *4 (7th Cir. May 26, 2005) (Rovner, J.) ("[W]e must direct a limited remand under the procedure outlined in *Paladino*."); *United States v. Schmeilski,* – F.3d –, 2005 WL 1243353, 2005 WL 1243353, at *3 (7th Cir. May 25, 2005) (Williams, J.) ("The sentencing judge should proceed on remand in accordance with the procedures we set forth in *Paladino*."); *United States v. Duran,* – F.3d –, No. 03-2506, 2005 WL 1163633 (7th Cir. May 10, 2005) (Ripple, J.) ("We ... order a limited remand of the sentence consistent with the procedure outlined in *Paladino*."); *United States v. Arroyo,* 406 F.3d 881, 891 (7th Cir. 2005) (Flaum, C.J.) ("We retain jurisdiction and remand to the district court pursuant to the procedure set forth in *Paladino*."); *United States v. Ngo,* 406 F.3d 839, 844 (7th Cir. 2005) (Cudahy, J.) ("[W]e will retain jurisdiction over the case but order a limited remand to the district court in keeping with the procedure outlined in *Paladino*."); *United States v. Askew,* 403 F.3d 496, 510 (7th Cir. 2005) (Kanne, J.) ("The district court is directed to return this case to use at the completion of its sentencing determination,

has reviewed the record from the original sentencing proceeding, including the docket and associated materials, in addition to obtaining the views of counsel. The original sentencing record includes the plea agreement, the presentence report with associated objections, the transcript of the sentencing proceeding and the Judgment and Commitment order.

The government argues that the court should limit its review under the *Paladino* limited remand to the record from the time of the original sentencing. Henry counters that the court should consider additional information beyond the original sentencing record. Henry wishes to include new information of letters from his wife and other family members. The letters from Henry's family discusses the negative impact that Henry's imprisonment has had on his family and specifically on his young children.

The court believes that it has discretion to allow the introduction of new information and need not limit itself merely to the record of the original sentence. The *Paladino* opinion explicitly requires that "the district court should obtain the views of counsel, at least in writing ... ." 401 F.3d at 484. The defendant and his lawyer at the time of the original sentencing under the mandatory Guideline system might have decided not to include certain types of information because that information would have had only minimal relevance when the court was operating under the mandatory sentencing system. That information as well as new information might now have considerable relevance under the advisory Guidelines system. The original sentencing record was not produced with an understanding that it would later be reviewed by the district court under a limited remand using an advisory Guidelines system. Therefore, the sentencing

---

(continued) pursuant to the procedures set forth in *Paladino*."); *United States v. Mykytiuk*, 402 F.3d 773, 778 (7th Cir. 2005) (Wood, J.) ("[T]he [district court] judge should follow the following procedure outlined in *Paladino*.").

13

judge may not have received the full breadth of arguments that the parties would have produced in the original sentencing had they known at that time that the Guidelines were to be applied in an advisory manner. *See e.g., United States v. Sumner*, 325 F.3d 884, 888-89 (7th Cir. 2003) (allowing for the introduction of new evidence by the prosecutor during remand for resentencing under a plain error review because a plain error is one that is not known or explored during the original sentencing and therefore the parties would not have properly addressed the matter during the original sentencing). A sentencing court cannot answer the *Paladino* limited remand question of whether it would have imposed a lesser sentence, and therefore whether prejudice has resulted without first receiving the further argument and information that the parties desire to present.

The fact that this court has reviewed and considered Henry's new information and allowed further argument from the parties, does not mean that we are writing a completely clean slate when it comes to the issues litigated at the time of the original sentencing. Any information considered by the court is still within the context of the overarching question of the *Paladino* limited remand, namely this court's determination of the effect of sentencing Henry under the mandatory Guidelines when considered advisory. Furthermore, if the *Paladino* limited remand results in a resentencing, the court may give little weight to some information, greater weight to other information during resentencing process than the court considered during the *Paladino* limited remand, and some information should not be considered at all on resentencing. *See e.g., United States v. Noble*, 367 F.3d 681, 682 (7th Cir. 2004) (holding that the government cannot try to introduce evidence to meet its burden of proof for the sentencing on the quantity of drugs related to uncharged drug-related misconduct on remand when the government failed to meet its

14

burden on that issue during the original sentencing).

The last issue on which the court should comment before ruling on the *Paladino* limited remand in Henry's case is the arguments presented by the parties over the appropriate weight to be given to the sentencing Guidelines now that the Guidelines are advisory. The parties' arguments mirror a division that is growing among the district courts after *Booker* on this issue. *Compare United States v. Ranum*, 353 F. Supp. 2d 984 (E.D. Wis. 2005), *with United States v. Wilson*, 355 F. Supp. 2d 1269 (D. Utah 2005).

The government's position is that the sentencing Guidelines, although now advisory instead of mandatory, should still be given considerable weight by the court when determining a sentence. Henry's position is that the Guidelines are now just one factor among the various factors established under the Sentencing Act, 18 U.S.C. § 3553, and therefore should be given no special authority or weight in the court's determination of a sentence.

The Seventh Circuit in *United States v. George* held that, "it is enough to calculate the [Guideline] range accurately and explain why (if the sentence lies outside it) this defendant deserves more or less." 403 F.3d 470, 473 (7th Cir. 2005). This court believes, therefore, that the proper approach regarding the weight to be given to the Guidelines is to start the sentencing process by calculating the Guideline range. Then the court should consider and give weight to that range, consider any Guideline departures, and determine what sentence is reasonable to impose. This court, of course, understands that it has discretion to vary from the Guideline range in imposing a reasonable sentence. However, the court believes that Henry's argument that the court should treat the Guidelines as merely one of several factors perhaps pushes the court's consideration too far away from the Guideline range calculation which is still the preliminary

step in the sentencing process.

In considering the limited remand issue in this case, the court has received the written arguments from the parties, has identified the information that is appropriate for the court's review, and has determined the proper way to evaluate Henry's sentence if the court had known that the Guidelines were advisory instead of mandatory when the court imposed Henry's original sentence on October 31, 2002. The court believes it is now in the position to decide the sentence the court would have imposed at the time of original sentencing had the court considered the Guidelines as advisory instead of mandatory. Therefore, the court believes it is in position to provide the record for the Seventh Circuit's review on the question of whether Henry was prejudiced by the imposition of his original sentence under the now unconstitutional mandatory Guidelines.

B. Application of the Paladino Limited Remand Procedure to Henry's Sentence

Henry plead guilty on June 28, 2002 (Dkt. No. 216), to one count of knowingly and intentionally using and causing to be used a communication facility, namely a telephone, in committing and causing and facilitating the commission of a felony violation of Title 21, United States Code, Sections 952 and 963, namely, conspiracy to import mixtures containing cocaine, from Panama to the United States, in violation of Title 21, United States Code, Section 843(b). (Dkt. No. 218 at ¶ 1). Henry was one of 26 defendants indicted in the "Baby Formula" case. *United States v. Watson-Herrera et al.*, No. 01 CR 1098.

Twenty-three defendants have been convicted in this case and sentenced. Three are considered fugitives. The lead defendant, Clacy Watson-Herrera, is in the custody of the government of Panama awaiting requested extradition to the United States for trial before this

court.

The indictment alleged the importation of cocaine and heroin from Panama and Jamaica to Chicago. A percentage of the illegal drugs were alleged to have been exported to other locations within the United States and to the United Kingdom. The plan admitted by several defendants used young women as couriers for the drugs. The alleged scheme was that young women would take an infant, either their own child or a child rented from others, with them when transporting the drugs. The use of the children allowed the placement of the drugs in baby formula cans in the hope of avoiding detection by law enforcement.

Henry's criminal action, as agreed to by both sides in the plea agreement, was his placing of a telephone call from his location in Ontario, Canada to Kim Washington in Chicago, Illinois on April 19, 1999. (*Id.* at ¶ 5). Henry used the phone call to provide Washington with information that she then used to obtain a $750 money transfer that Henry had sent, under the direction of Byron Watson, to Washington. Washington, who had been recruited by Watson to smuggle drugs, used the money to buy an airline ticket from Chicago to Panama and also rented a baby for the trip. Washington received cocaine-filled baby formula cans from Watson in Panama and smuggled the cans back to Chicago. She delivered one drug filled baby formula can to a contact in Chicago and then delivered the remaining drug filled cans to New York.

At Henry's sentencing on October 31, 2002, the court first determined under the mandatory Guidelines system that Henry's adjusted offense level was 23, which under the 2001 version of the Sentencing Chart resulted in a sentencing range of 46 to 57 months. (Oct. 31, 2002 Tr. at pg. 14). The offense level of 26 was calculated based on the quantity of drugs involved and then reduced by three points for Henry's timely acceptance of responsibility. The

court did not add a 2 point enhancement for the use of a child in the crime and rejected Henry's request for a four point reduction as a minor participant reduction based on the information to which Henry plead guilty. (*Id.* at pg. 11-14). However, the statutory maximum sentence for 21 U.S.C. § 843(b) is 48 month, so the sentencing range effectively became 46 to 48 months.

The parties disputed the relevant conduct that Henry was involved in. The indictment alleged a person named "Mike" was involved in the conspiracy and Henry asserted he was not the person alleged as "Mike." The court heard from the lawyers and, of course, from Henry himself. The court imposed a sentence based on the offense to which Henry had admitted and plead guilty. (*Id.* at pg. 37). Henry was sentenced to forty-eight (48) months in prison, $10,000 fine, and the $100 special assessment. (Dkt. No. 325, Tr. pg. 37). The court also originally imposed five years of supervised release but that was later reduced by an amended sentencing order of September 3, 2003 to one year of supervised release. (Dkt. No. 392).

As instructed in *Paladino*, this court has obtained the written views of counsel on this issue. The government argues that there is no indication that Henry would have received a lesser sentence had the Guidelines been advisory. Henry argues that this court should inform the Seventh Circuit that it wishes to impose a lesser sentence. Henry also has provided letters from his family discussing the impact that his imprisonment has had on his family and especially his young children.

Considering all that is before this court, this court informs the Seventh Circuit that it would have imposed the same sentence that this court actually imposed on Henry had this court known that the Guidelines were advisory instead of mandatory. The court imposed a sentence of 48 months which is near the lowest end of the sentencing Guideline range. The court had

discretion to impose a lower sentence under the Guidelines then considered mandatory, 46 or 47 months. The court chose not to exercise that discretion within the mandatory Guideline range. The fact that the court did not exercise its discretion to impose a lesser sentence within the mandatory Guidelines assists the court in now concluding that it would not have imposed a lesser sentence even if the court had known that it had additional discretion under the advisory Guidelines. Moreover, the involvement of Henry in the crime to which he pleaded guilty required the maximum sentence under the statute which was 48 months.

The court understands and appreciates the information presented by Henry as to the impact that his incarceration has had on his family and children. The court was aware of Henry's family, however, at the time of the original imposition of his sentence and the difficulties Henry's family faces are not usual in light of Henry's incarceration. Consequently, the court does not believe that this information would have resulted in the imposition of a lesser sentence if Henry had been sentenced under the advisory Guidelines.

## CONCLUSION

For the reasons set forth above, this court informs the Seventh Circuit, pursuant to the *Paladino* limited remand ordered in *United States v. Henry*, 124 Fed. Appx. 464 (7th Cir. 2005), that upon a remand for resentencing, this court would impose the same sentence that it originally imposed on Henry on October 31, 2002.

ENTER:

JAMES F. HOLDERMAN
United States District Judge

DATE: June 7, 2005